## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **SONY/ATV MUSIC PUBLISHING LLC et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | 3:09-cv-01098 |
| | ) | **Judge Nixon** |
| | ) | **Magistrate Judge Griffin** |
| **D.J. MILLER MUSIC DISTRIBUTORS,** | ) | |
| **INC., et al.,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Pending before the Court are seven Motions that have been filed separately by Plaintiffs, all of which seek to dismiss counterclaims and affirmative defenses of JS Karaoke, LLC ("JS Karaoke"), BottomLineSources.com, Inc. ("BottomLineSources"), Jean Strauser, and John Strauser (collectively, "Defendants"). These Motions are: (1) Plaintiffs' Motion to Dismiss Counterclaim 1 (Doc. No. 107), filed along with a supporting Memorandum (Doc. No. 108), and to which Defendants have filed a Response (Doc. No. 136); (2) Plaintiffs' Motion to Dismiss Counterclaim 2 (Doc. No. 109), filed along with a supporting Memorandum (Doc. No. 110), and to which Defendants have filed a Response (Doc. No. 137); (3) Plaintiffs' Motion to Dismiss Counterclaim 3 (Doc. No. 111), filed along with a supporting Memorandum (Doc. No. 112), and to which Defendants have filed a Response (Doc. No. 137); (4) Plaintiffs' Motion to Dismiss Counterclaim 4 of Defendant JS Karaoke (Doc. No. 113), filed along with a supporting Memorandum (Doc. No. 114), and to which Defendants have filed a Response (Doc. No. 137); (5) Plaintiffs' Motion to Dismiss Defendant JS Karaoke's Tennessee Consumer Protection Act Counterclaim (Doc. No. 116), filed along with a supporting Memorandum (Doc. No. 117), and to

which Defendants have filed a Response (Doc. No. 137); (6) Plaintiffs' Motion to Dismiss Defendant JS Karaoke's Counterclaim 7 (Doc. No. 118), filed along with a supporting Memorandum (Doc. No. 119), and to which JS Karaoke has filed a Response (Doc. No. 135); and (7) Plaintiffs' Motion to Strike Affirmative Defenses of JSK Defendants and Supporting Memorandum (Doc. No. 121), to which Defendants have filed a Response (Doc. No. 138).

For the reasons stated below, Plaintiffs' Motion to Dismiss Counterclaim 1, Motion to Dismiss Counterclaim 2, and Motion to Dismiss Defendant JS Karaoke's Tennessee Consumer Protection Act Counterclaim are **GRANTED**. Plaintiffs' Motion to Dismiss Counterclaim 3, Motion to Dismiss Counterclaim 4 of Defendant JS Karaoke, Motion to Dismiss Defendant JS Karaoke's Counterclaim 7, and Motion to Strike Affirmative Defenses are **DENIED**.

## I.  BACKGROUND[1]

Plaintiffs allege that they are the owners/administrators of music copyrights in numerous original music compositions, which are identified on schedules attached to the Third Amended Complaint ("Complaint") as Exhibits A-M.  Plaintiffs further allege that since at least early 2006, all of the named defendants had been participating in the manufacture, reproduction, distribution, advertising, promotion and offering for sale of illegal and unauthorized copies of Plaintiffs' music compositions in the form of karaoke recordings in various formats for discs and Internet downloads.  Plaintiffs allege that the defendants' conduct constituted direct, contributory and vicarious infringement of Plaintiffs' music copyrights, depriving Plaintiffs of goodwill and usual and customary royalties to which they would be entitled if the music compositions at issue were properly licensed with synchronization licenses, karaoke licenses or advertising/promotional

---

[1] The facts in this section are drawn from Plaintiffs' Third Amended Complaint (Doc. No. 77), unless otherwise noted.

licenses.  Plaintiffs assert ten claims for relief for various forms of copyright infringement and unfair competition against Defendants and certain other named defendants who are not at issue in the pending Motions.

Defendants filed individual Answers (Doc. Nos. 87-90), wherein they provide twenty identical affirmative defenses to Plaintiffs' claims, nineteen of which are at issue in the pending Motion to Strike Affirmative Defenses of JSK Defendants (all but defense 88).  The defenses read as follows:

> 76. Plaintiffs' claims are barred by the applicable statute of limitations.
> 77. Plaintiffs' claims are barred by the doctrines of latches, estoppel, and/or waiver.
> 78. Plaintiffs' claims are barred by license.
> 79. Plaintiffs' claims are barred by accord and satisfaction.
> 80. Plaintiffs' claims are barred by the settlement agreement referenced in Defendants' Motion to Dismiss.
> 81. Plaintiffs' claims are barred by payment.
> 82. Plaintiffs' claims are barred because Defendant has not engaged in any type of infringement.
> 83. Plaintiffs' claims are barred, in part, because Plaintiffs' [*sic*] have not met the necessary preconditions under 17 U.S.C. § 411.
> 84. Plaintiffs' claims are barred by the doctrine of unclean hands.
> 85. Plaintiffs' claims are barred in whole or in part by lack of standing and/or a failure to meet necessary preconditions prior to filing.
> 86. Plaintiffs' claims are barred in whole or in part by lack of ownership interests and/or exclusive license.
> 87. Plaintiffs' claims are barred in whole or in part by lack of indispensible and/or necessary parties.
> 88. Plaintiffs' claims for statutory damages are barred, in part, by 17 U.S.C. § 412.
> 89. To the extent that Defendant is found to have infringed any work (which Defendant denies), Plaintiffs' claims for statutory damages are limited by 17 U.S.C. § 504(c)(2) because Defendant was not aware and had not [*sic*] reason to believe the acts alleged constituted infringement.
> 90. Defendant is not liable for any infringement that may have been committed by D.J. Miller Distributors, Inc. and/or Dale S. Miller.

91. Defendant is not liable for any infringement that may have been committed by any [of] the co-defendants in this case.

92. Plaintiffs have failed to state claims upon which relief may be granted.

93. Plaintiffs' claims are barred in whole or in part because one or more of the works at issue do not meet the requirements for protection under the Copyright Act, including but not limited to, originality and authorship.

94. Plaintiffs' claims for monetary damages are offset in whole or in part by Defendant's counterclaims below.

95. Defendant preserves the right to assert additional defenses at the conclusion of discovery.

(*Id.* ¶¶ 76-95). Defendants also provide identical counterclaims for a declaratory judgment of non-infringement (*id.* ¶¶ 98-100) and for attorneys' fees under 17 U.S.C. § 505 (*id.* ¶¶ 101-03), and nearly identical counterclaims of defamation (Doc. Nos. 87-88 ¶¶ 104-13; Doc. Nos. 89-90 ¶¶ 104-12). Defendant JS Karaoke also asserts counterclaims for tortious interference with existing and prospective economic relations (Doc. No. 89 ¶¶ 113-19), for violations of the Tennessee Consumer Protection Act (*id.* ¶¶ 125-128), and for enforcement and/or breach of contract (*id.* ¶¶ 129-34). Defendants JS Karaoke and BottomLineSources have asserted additional counterclaims that are not at issue in the pending Motions.

## II. MOTIONS TO DISMISS COUNTERCLAIMS

### A. Legal Standard

In ruling on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the allegations made in the complaint and construe the allegations in the plaintiff's favor. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11-12 (6th Cir. 1987). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must contain either direct or inferential allegations respecting all of the material elements to sustain recovery under some viable legal theory. *Id.* at 944; *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

### B. Motion to Dismiss Counterclaim 1

Plaintiffs seek dismissal of Defendants' counterclaims requesting a declaratory judgment of non-infringement. Plaintiffs argue that these counterclaims must be dismissed because they clearly seek a declaratory judgment regarding Defendants' alleged past violations, and declaratory judgments are only appropriate for prospective relief. (Doc. No. 108 at 2.)

In response, Defendants assert that the declaratory judgment counterclaims are appropriate because such judgments are available to alleged infringers in copyright cases where that party "has a real and reasonable apprehension that it will be subject to liability if it continues to use allegedly copyrighted material." (Doc. No. 136 at 2.) Defendants argue that they have satisfied this requirement because Plaintiffs' Complaint alleges that Defendants have engaged in continuing violations of the Copyright Act and Plaintiffs seek injunctive relief from future harm caused by Defendants. (*Id.* at 4-10.) Defendants assert that the counterclaims clearly cover past and future conduct, and as such, dismissal of the counterclaims is inappropriate. (*Id.* at 10.)

The Court agrees with Plaintiffs that Defendants' first counterclaims, as currently styled, do not meet the requirements for a declaratory judgment action. The Supreme Court has made clear that there must be a "claimed continuing violation of federal law" for a declaratory judgment to be warranted. *Green v. Mansour*, 474 U.S. 64, 73 (1985). Here, Defendants individually seek declaratory judgments that each Defendant "*has* not engaged in infringement of

any type in regard to any of the works identified on Exhibits A-M of the Complaint." (Doc. Nos.

87-90 ¶ 100) (emphasis added). While Defendants point to numerous allegations in Plaintiffs'

Complaint that frame Defendants' alleged violations as ongoing, Defendants' counterclaims

merely seek a declaratory judgment for past violations. Such claims are impermissible under the

Supreme Court's standard in *Green v. Mansour*. Plaintiffs' Motion to Dismiss Counterclaim 1 is

therefore **GRANTED** and Defendants' Counterclaim 1 is **DISMISSED**. Defendants are free to

seek the Court's leave to amend their individual Answers in a motion if they wish to reinstate

their first counterclaim.

### C. Motion to Dismiss Counterclaim 2

Plaintiffs ask the Court to dismiss Defendants' counterclaims for an award of attorneys'

fees under 17 U.S.C. § 505, arguing that such awards are collateral to a claim of copyright

infringement rather than the basis for a separate cause of action. (Doc. No. 110 at 2.) Plaintiffs

also argue that dismissal of these counterclaims is appropriate because Local Rule 54.01(b)

specifies that the requests of attorneys' fees must be brought pursuant to a motion within thirty

days of the entry of "final judgment." (*Id.* at 2-3.)

In response, Defendants argue that dismissal of the counterclaims for attorneys' fees is

improper. They argue that 17 U.S.C. § 505 does not prohibit a counterclaim for attorneys' fees

and that Plaintiffs fail to cite any Sixth Circuit precedent that addresses counterclaims for

attorneys' fees under § 505. (Doc. No. 137 at 4-5.) Furthermore, Defendants argue that,

assuming Plaintiffs' arguments to be true, Plaintiffs' pleadings in their Complaint have failed to

meet this standard because Plaintiffs request such fees eight times. (*Id.* at 5.) Finally on this

point, Defendants ask that, even if the Court finds the counterclaims for attorneys' fees to be

impermissible, the Court allow the counterclaims to remain "so as to give notice to Plaintiffs of

Defendants' intent to seek attorney's fees for all works-at-issue for which they are found to have not infringed." (*Id.* at 6.)

The Court **GRANTS** Plaintiffs' Motion to Dismiss Counterclaim 2. Local Rule 54.01(b) quite clearly provides that a request for attorneys' fees be brought pursuant to a motion within thirty days of the entry of "final judgment." Thus, while Defendants are correct in that 17 U.S.C. § 505 does not expressly bar a counterclaim for attorneys' fees, the Local Rules have established a very clear mechanism by which a party may seek attorneys' fees, and Defendants must comply with that process. Moreover, while Plaintiffs' Complaint does include multiple requests for attorneys' fees, such requests are more properly construed as part of a broader prayer for relief attached to each claim against one or more defendants than as an independent, free-standing claim, as is the case with Defendants' counterclaims. The Court does not believe providing notice to Plaintiffs of Defendants' intent to seek attorneys' fees at entry of final judgment to be a sufficient reason to allow the counterclaims to stand. As such, Defendants' counterclaims for attorneys' fees are **DISMISSED**.

### D. Motion to Dismiss Counterclaim 3

Plaintiffs have also moved to dismiss Defendants' counterclaims for defamation, citing the absolute litigation privilege. Plaintiffs note that Defendants' counterclaims are based on allegations of infringement in the Complaint, as well as on alleged statements made by Plaintiffs that the Strausers were "liars" and "thieves." All of these statements, Plaintiffs argue, are privileged because they were made either in anticipation of litigation or during the course of judicial proceedings. (Doc. No. 112 at 2-5.)

Defendants respond that the statements forming the basis of the defamation counterclaims are not subject to the litigation privilege. Defendants first note that the

counterclaims "do not allege that only Plaintiffs' attorney made the defamatory statements." (Doc. No. 137 at 6.) Defendants then argue that, even if the allegedly defamatory statements were made solely by Plaintiffs' attorney, the statements are outside the scope of the litigation privilege because they were made to third parties, namely co-defendant Emerson Radio Corporation, which was not a party to this action at the time the statements were allegedly made. (*Id.* at 7-8.)

Defendants also assert that they have alleged a prima facie claim of defamation. They first note that Plaintiffs' Motion did not contest the substance of the defamation counterclaims, instead only focusing on the defense of privilege. (*Id.* at 8.) They then argue that Plaintiffs' decision to remove forty seven works from the list of allegedly infringed works between the filing of the Second and Third Amended Complaints is evidence of Plaintiffs' "reckless disregard for truth," because it is essentially an admission "that Defendants had not actually infringed these works." (*Id.*) Finally, Defendants assert that statements made by Plaintiffs to "unrelated parties, specifically to persons and entities in Defendants' industry" also serve as the basis for the defamation counterclaims. (*Id.*)

The Court **DENIES** Plaintiffs' Motion to Dismiss Counterclaim 3 because Defendants have stated plausible counterclaims for defamation and because the defense of absolute litigation privilege does not bar the counterclaims. As an initial matter, the Court notes that Defendants' counterclaims do not state which state law serves as the basis of the claims. While Defendants' Response cites to Tennessee state law, Plaintiffs believe that Defendants' counterclaims would fail under either Tennessee or Florida state law. Florida law could be applicable to this counterclaim because all of the Defendants are Florida residents[2], and thus the injury they would

---

[2] Plaintiffs' Complaint alleges that JS Karaoke is a Florida Limited Liability Company, BottomLineSources is a Florida Corporation, and John Strauser is a Florida resident. (Doc. No. 77 ¶¶ 13-14, 16.) The Complaint does not

have suffered as a result of Plaintiffs' alleged defamatory acts would have been felt in Florida. The distinction is immaterial to this Motion because the Court finds that Defendants have put forth sufficient facts to establish a plausible claim for defamation under either Tennessee or Florida law.[3]

A plaintiff asserting a defamation claim under Tennessee law "must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem. Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). In Florida, "to state a claim of defamation, a plaintiff must allege that '(1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff.'" *Bush v. Raytheon Co.*, 373 F. App'x 936, 940-41 (11th Cir. 2010) (quoting *Valencia v. Citibank Int'l*, 728 So. 2d 330, 330 (Fla. Dist. Ct. App. 1999)).

Defendants meet the requirements of both the Tennessee and Florida tests. First, with respect to Tennessee's prima facie case, Defendants allege that Plaintiffs published the statement to third parties. (Doc. Nos. 87-88 ¶¶ 107-08; Doc. Nos. 89-90 ¶ 107.) Defendants also allege that Plaintiffs knew the statements were false, or acted with reckless disregard or negligently

---

mention Jean Strauser's place of residence, however, it does allege that Jean Strauser is the wife of John Strauser (*id.* ¶ 17), and thus it is likely that she is also a Florida resident. Defendants have admitted all of these allegations in their respective Answers. (Doc Nos. 87-90 ¶¶ 13-14, 16-17.)

[3] In *Chambers v. Cooney*, 535 F. Supp. 2d 1255, 1259-60 & n.4 (S.D. Ala. 2008), the Southern District of Alabama dealt with a somewhat similar issue. In that case, the defendant/counter-plaintiff filed a state law counterclaim against certain counter-defendants for tortious interference with prospective economic advantage, and apparently did not specify the relevant state law in its pleading. Nevertheless, the court noted that both parties' briefs on the issue cited primarily to New York law, which the court determined to be sensible because the defendant/counter- plaintiff was a New York resident, and thus that is where the alleged injury would have been felt. The court, therefore, assumed, without deciding, that New York law was applicable to the claim. While *Chambers* differs from the instant case in terms of the parties' lack of clear consensus as to the source of law here, the Court finds this case to be instructive in that it suggests that the state laws cited by the parties in their briefings are relevant to the determination of which law to apply. Thus, while Florida may appear to be the only relevant law because that is the state of Defendants' residence, the Court will discuss both Tennessee law and Florida law because both sources are raised by the parties in their briefings—Tennessee by both parties, and Florida by Plaintiffs.

with respect to the truth of the statements (Doc. Nos. 87-88 ¶ 110; Doc. Nos. 89-90 ¶ 109), thereby alleging the required second and third elements under Tennessee law. Similarly, Defendants have alleged a prima facie case under Florida law. Defendants allege that Plaintiffs made false statements about Defendants to third parties (Doc. Nos. 87-88 ¶¶ 107-08; Doc. Nos. 89-90 ¶ 107), thus satisfying the first three elements of the Florida test. Defendants also allege that they have suffered injury as a result of Plaintiffs' alleged conduct, the fourth element of the prima facie case. (Doc. Nos. 87-88 ¶ 111; Doc. Nos. 89-90 ¶ 110.) Thus, under either test, Defendants have alleged a prima facie case of defamation.

Moreover, the Court finds that the litigation privilege is inapplicable to Defendants' counterclaims using either Tennessee's or Florida's tests. Tennessee uses a four-part test to determine if a communication is protected by the litigation privilege. The four elements used to determine whether the defense of litigation privilege is properly asserted are:

> (1) the communication was made by an attorney acting in the capacity of counsel, (2) the communication was related to the subject matter of the proposed litigation, (3) the proposed proceeding must be under serious consideration by the attorney acting in good faith, and (4) the attorney must have a client or identifiable prospective client at the time the communication is published.

*Simpson Strong-Tie Co. v. Stewart, Estes & Donnell*, 232 S.W.3d 18, 24 (Tenn. 2007). Meanwhile, Florida's litigation privilege is applicable to "acts occurring during the course of judicial proceedings." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004) (citing *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606, 607-08 (Fla. 1994)). As an affirmative defense, an allegation that a communication falls within the scope of the litigation privilege "may be considered in resolving

a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Id.* at 1277 (citations and quotations omitted).

The Court finds that Plaintiffs have failed to establish that Defendants' pleadings demonstrate that the absolute litigation privilege applies under either Tennessee or Florida's tests. Using the Tennessee standard, Defendants dispute that the first element is met, arguing that their defamation counterclaims do not indicate that the communications at issue were made solely by Plaintiffs' attorney. Defendants are correct. The counterclaims allege that Plaintiffs, "directly or through their agents, representatives, and/or attorneys," defamed Defendants. (Doc. Nos. 87-88 ¶¶ 105, 107, 113; Doc. Nos. 89-90 ¶¶ 105, 112.) Consequently, the litigation privilege cannot apply to the alleged statements serving as the basis of Defendants' defamation counterclaims under Tennessee law.

It is also not clear from the face of Defendants' pleadings that Plaintiffs meet the requirements of the Florida test. While it is true that the counterclaims reference allegations contained in Plaintiffs' Complaint, thus arguably making the privilege applicable, such allegations do not form the entire basis of Defendants' counterclaims. Defendants also allege that Plaintiffs communicated allegedly defamatory statements to third parties, including Emerson Radio Corporation (Doc. Nos. 87-88 ¶ 108; Doc. Nos. 89-90 ¶ 107), which Defendants allege was a non-party to the litigation at the time the statements were believed to be made (Doc. No. 137 at 8). While Defendants provide no details as to the content of these communications to Emerson in the counterclaims, the Court notes that Emerson was not, in fact, a named defendant prior to the filing of the Third Amended Complaint. (*Compare* Doc. No. 26 ¶ 15 (Plaintiffs' Second Amended Complaint, filed on January 21, 2010, noting that Emerson was not a party to the action), *with* Doc. No. 77 ¶ 11 (Plaintiffs' Third Amended Complaint, filed on September 29,

2010, listing Emerson as a named defendant).)  Such communications, therefore, do not fall within the plain language of the Florida rule, because they would not have been made "during the course of judicial proceedings," as Emerson was not yet a party to those proceedings. Florida's privilege rule is thus inapplicable to Defendants' counterclaims.

Because Defendants have alleged prima facie claims of defamation under either Tennessee or Florida law, and because Plaintiffs have failed to establish that the absolute litigation privilege applies to the statements at issue, the Court **DENIES** Plaintiffs' Motion to Dismiss Counterclaim 3.

### E.  Motion to Dismiss Counterclaim 4 of Defendant JS Karaoke

Plaintiffs' Motion to Dismiss Counterclaim 4 of Defendant JS Karaoke alleges that the statements that form the basis of JS Karaoke's counterclaim for tortious interference with existing and prospective economic relations are also within the scope of the litigation privilege. (Doc. No. 114 at 4-5.)  JS Karaoke's Response argues that, as with the defamation counterclaims, the privilege is inapplicable and that JS Karaoke has alleged a prima facie case for this counterclaim.  (Doc. No. 137 at 9-10.)

As with Counterclaim 3, it remains unclear what state law serves as the basis of this counterclaim.  This ambiguity is, once again, irrelevant, because the Court finds that JS Karaoke has alleged a prima facie case against Plaintiffs and that Plaintiffs have failed to demonstrate that the litigation privilege applies under either Tennessee or Florida law.  Consequently, Plaintiffs' Motion to Dismiss Counterclaim 4 of Defendant JS Karaoke is **DENIED**.

In Tennessee, the tort of intentional interference with business relationship has five elements:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons;

(2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means . . . ; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc., v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (citations and emphasis omitted). JS Karaoke's counterclaim alleges all five of these elements. First, JS Karaoke alleges existing and prospective business relationships with numerous entities, including Emerson. (Doc. No. 89 ¶ 115.) Second, JS Karaoke alleges that Plaintiffs knew of these business relationships. (*Id.* ¶ 116.) Third, JS Karaoke alleges that Plaintiffs "intended to and indeed did unlawfully interfere" with these relationships. (*Id.* ¶ 117.) Fourth, by reference to preceding paragraphs in the Answer (*id.* ¶¶ 113-14), JS Karaoke alleges that Plaintiffs knowingly communicated false information to third parties (*id.* ¶¶ 107-09). Finally, JS Karaoke alleges it has suffered damages as a result of Plaintiffs' conduct. (*Id.* ¶ 119.)

Similarly, the elements of the equivalent tort under Florida state law are: "(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Gossard v. Adia Servs.*, 723 So. 2d 182, 184 (Fla. 1998) (citations and quotations omitted). For the reasons stated above with respect to Tennessee law, JS Karaoke has clearly alleged a prima facie case under Florida law as well.

Additionally, the Court finds that the litigation privilege is inapplicable to this counterclaim for the same reasons as given above with respect to Defendants' defamation counterclaims. *See supra* Part II.D. Consequently, the Court **DENIES** Plaintiffs' Motion to Dismiss Counterclaim 4 of Defendant JS Karaoke.

### F. Motion to Dismiss Defendant JS Karaoke's Tennessee Consumer Protection Act Counterclaim

Plaintiffs have also moved to dismiss JS Karaoke's counterclaim under the Tennessee Consumer Protection Act ("TCPA").[4]  In the counterclaim, JS Karaoke alleges that Plaintiffs "falsely asserted that [Defendants] engaged in infringement and/or were manufacturing, distributing, or producing unlicensed karaoke recordings," in violation of Tenn. Code Ann. § 47-18-104(b)(8)[5], and that Plaintiffs "represent[ed] to [JS Karaoke] that it had reach [*sic*] a settlement agreement at which time [JS Karaoke] relie[d] on [Plaintiffs'] false representation," in violation of Tenn. Code Ann. § 47-18-104(b)(27).  (Doc. No. 89 ¶ 126.)

Plaintiffs put forth four arguments for dismissing this counterclaim: (1) JS Karaoke has failed to meet the heightened pleading standards under the TCPA; (2) JS Karaoke lacks standing to bring a TCPA claim; (3) JS Karaoke cannot bring a TCPA claim based on allegations of disparagement made in pleadings; and (4) failed settlement negotiations cannot serve as the basis for a TCPA claim because they do not affect "trade or commerce."  (Doc. No. 117 at 4.)  JS Karaoke contests all four of Plaintiffs' arguments, asserting that it has properly stated a claim under the TCPA.  (Doc. No. 137 at 10-15.)

With respect to the first argument, Plaintiffs argue that Tennessee courts have clearly established that claims brought under the TCPA are subject to heightened pleading standards. (Doc. No. 117 at 4.)  According to Plaintiffs, JS Karaoke has "fail[ed] to set forth any specific fraudulent or deceptive acts on the part of" Plaintiffs, including specific facts or the required

---

[4] While co-defendant BottomLineSources has asserted an identical counterclaim on this basis (Doc. No. 90 ¶¶ 118-21), Plaintiffs only move to dismiss the counterclaim brought by JS Karaoke (Doc. No. 89 ¶¶ 125-28). Consequently, the Court will only analyze JS Karaoke's counterclaim, leaving BottomLineSources's counterclaim in place.
[5] JS Karaoke mistakenly cites to §§ 47-18-104(8) and 47-18-104(27) in its counterclaim.

allegations of "the time, place and content of the alleged misrepresentation." (*Id.* at 5 (citations and quotations omitted).)

In response, JS Karaoke argues that it has satisfied the pleading standard for TCPA claims because the normally heightened standard is loosened for claims based on allegations of complex or ongoing fraudulent activities. (Doc. No. 137 at 11.) Consequently, JS Karaoke argues, its rather general allegations of Plaintiffs' alleged deceptive and disparaging acts are sufficient because it "cannot possibly know every instance in which it has been disparaged by Plaintiffs." (*Id.*)

The Court agrees with Plaintiffs that JS Karaoke has failed to meet the pleading standard of the TCPA, and therefore **GRANTS** Plaintiffs' Motion to Dismiss Defendant JS Karaoke's Tennessee Consumer Protection Act Counterclaim. Courts have consistently held that claims brought pursuant to the TCPA must satisfy a heightened pleading standard. *See Metro. Prop. & Cas. Ins. Co. v. Bell*, No. 04-5965, 2005 WL 1993446, at *5 (6th Cir. Aug. 17, 2005) (stating that "allegations of fraud must be pleaded with specificity" and applying that requirement to § 47-18-109 of the TCPA); *Walker v. Frontier Leasing Corp.*, No. E2009-01445-COA-R3-CV, 2010 Tenn. App. LEXIS 226, at *13 (Tenn. Ct. App. Mar. 30, 2010) (noting that while allegations of fraud under the TCPA "can be 'plain and simple,' they [nevertheless] must be particular enough that the fraud can be seen on the face of the complaint"); *Harvey v. Ford Motor Credit Co.,* 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999) (requiring a plaintiff to plead claims under the TCPA "with particularity"); *Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990) (stating that "circumstances constituting fraud must be stated with particularity" with respect to a TCPA claim).

Despite JS Karaoke's argument that these normally heightened pleading standards under the TCPA are loosened for claims based on ongoing or complex frauds, the authority cited by JS Karaoke is distinguishable from the instant case. JS Karaoke cites to *Michaels Building Co. v. Ameritrust Co., N.A.*, to support its argument that it is not required to plead detailed evidentiary matters. 848 F.2d 674, 679 (6th Cir. 1988). In *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, however, the Sixth Circuit found that *Michaels Building* "did not obviate the need for a plaintiff to specifically allege the essential elements of fraud that constitute a violation of the statute forming the basis of the plaintiff's cause of action." 501 F.3d 493, 505 (6th Cir. 2007). Moreover, the Sixth Circuit noted that in *Michaels Building*,

> the plaintiffs had specifically pled "the parties and the participants to the alleged fraud, the representations made, the nature in which the statements are alleged to be misleading or false, the time, place and content of the representations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on the fraud, and the injury resulting from the fraud."

*Id.* (quoting *Michaels Bldg. Co.*, 848 F.2d at 679).

JS Karaoke also cites to *United States v. Smith & Nephew, Inc.*, involving a claim under the Federal False Claims Act, for the proposition that the pleading standards are loosened in cases "where the alleged fraud did not occur at a discrete time and place and instead the transactions involved are complex or cover a long period of time." 749 F. Supp. 2d 773, 784 (W.D. Tenn. 2010) (citations and quotations omitted). The court in *Smith & Nephew*, however, found that the plaintiff's "amended complaint contain[ed] significant detail, including the contracts under which the allegedly illicit sales occurred and the items that are allegedly labeled falsely," even though no dates or times were given. *Id.* at 785. Consequently, that court found the plaintiff's complaint to have satisfied the required pleading standard and therefore denied the defendant's Rule 12(b)(6) motion to dismiss. *Id.*

JS Karaoke's counterclaim under the TCPA, by contrast, is superficial and almost entirely void of any detailed allegations of fraud.  With respect to § 47-18-104(b)(8), JS Karaoke's counterclaim merely copies the statutory language—"Disparaging the goods, services or business of another by false or misleading representations of fact"—and adds, "including, but not limited to, falsely asserting that [Defendants] engaged in infringement and/or were manufacturing, distributing, or producing unlicensed karaoke recordings."  (Doc. No. 89 ¶ 126.) Similarly, with respect to § 47-18-104(b)(27), JS Karaoke copies statutory language—"Engaging in any other act or practice which is deceptive to the consumer or to any other person"—and adds, "including, but not limited to, representing to [JS Karaoke] that it had reach [*sic*] a settlement agreement at which time [JS Karaoke] relie[d] on [Plaintiffs'] false representation." (*Id.*)

While it is true that JS Karaoke need not provide significant detail if it alleges ongoing fraud, JS Karaoke has failed to even allege that this case involves such a situation of continuing fraudulent acts on the part of Plaintiffs or provided any allegations that could lead the Court to such an inference.  The counterclaim, therefore, does not even clearly fall within the looser pleading standard for such types of continuing fraud.  Even if it were to fall within this exception, however, JS Karaoke's counterclaim is well short of the level of detail provided in *Michaels Building* and *Smith & Nephew*.  In contrast to those cases, JS Karaoke provides almost no detail or contextual information whatsoever.  JS Karaoke does, of course, provide more than a mere recitation of the statutory language by at least identifying the topics of Plaintiffs' alleged fraud under each statutory provision.  However, these bare-bones and overly general allegations fail to satisfy the pleading standards under the TCPA.  JS Karaoke has not provided any information about the times, places, or participants in the alleged fraud, including the individuals

to whom the alleged misrepresentations of infringement were communicated. While JS Karaoke may not know detailed information about "every instance" of fraud allegedly committed by Plaintiffs, it certainly should know, and should have pleaded, information about some of the instances of fraud. At the very least, JS Karaoke should have been able to provide greater detail about Plaintiffs' alleged false representations about the settlement agreement, because those representations were allegedly made to JS Karaoke itself. JS Karaoke, however, has failed to do this, and therefore has failed to satisfy the pleading standards for TCPA claims.

Because the Court finds that JS Karaoke failed to satisfy the pleading standards under the TCPA, discussion of Plaintiffs' three other arguments is unnecessary, and Plaintiffs' Motion to dismiss this counterclaim is **GRANTED**. JS Karaoke's counterclaim under the TCPA is therefore **DISMISSED**.

### G. Motion to Dismiss Defendant JS Karaoke's Counterclaim 7

Plaintiffs have moved to dismiss JS Karaoke's counterclaim for enforcement and/or breach of contract. (Doc. No. 118.) This counterclaim is based on a settlement agreement ("Agreement") that JS Karaoke allegedly entered into with Plaintiffs, granting it an ongoing karaoke license ("License"). (Doc. No. 89 ¶ 130.) JS Karaoke alleges that Plaintiffs "refuse to honor their obligations under the settlement agreement . . . and have breached the settlement agreement by filing this lawsuit" (*id.* ¶ 132), and JS Karaoke asserts a counterclaim on this basis.

With respect to this counterclaim, the parties disagree as to the law to be applied to the Agreement, the relevant legal tests to be applied to the Agreement, and whether the Agreement can be enforced even without a fully executed and signed writing. (*See* Doc. No. 119 at 3-13; Doc. No. 135 at 6-14.) Furthermore, JS Karaoke asserts that Plaintiffs' argument is inappropriate for a motion to dismiss. JS Karaoke contends that "Plaintiffs improperly argue the

merits" of the counterclaim, asking "the Court to weigh the facts and make a determination that Defendant's allegations are factually *incorrect*, not factually *insufficient*," contrary to the standard for Rule 12(b)(6) motions. (Doc. No. 135 at 3-4.) JS Karaoke takes note of the Court's prior Order on a Motion to Dismiss, wherein the Court denied the Motion because it was unable to "resolve the legal issue of whether there was a valid and enforceable settlement agreement without considering the evidence." (Doc. No. 76 at 6.)

The Court **DENIES** Plaintiffs' Motion to Dismiss Defendant JS Karaoke's Counterclaim 7. As JS Karaoke noted, the Court previously denied a Motion to Dismiss based on the Agreement, noting that the "parties presented affidavits and other forms of evidence in support of their positions." (*Id.*) The Court, at that time, refused to consider this evidence, as it went beyond the scope of the pleadings, and noted that it was unable to "resolve the legal issue of whether there was a valid and enforceable settlement agreement without considering this evidence." (*Id.*) In support of its arguments in the instant Motion to Dismiss, Plaintiffs have cited many of the same documents. (Doc. Nos. 28-3, 34, 36, 39, and 64[6].) The Court refused to determine whether the Agreement was valid and enforceable at the time of its previous Order, and refuses to do the same today. These matters are legal issues that require determinations of facts beyond the scope of the pleadings, something that is improper when ruling on a motion to dismiss. Plaintiffs' Motion to Dismiss Defendant JS Karaoke's Counterclaim 7 is therefore **DENIED** without prejudice. The parties may revisit the issue in a summary judgment motion once discovery has concluded.

In sum, Plaintiffs' Motion to Dismiss Defendants' Counterclaim 1 (Doc. No. 107), Motion to Dismiss Defendants' Counterclaim 2 (Doc. No. 109), and Motion to Dismiss

---

[6] This Document is an amended version of a declaration filed as Document 34.

Defendant JS Karaoke's Tennessee Consumer Protection Act Counterclaim (Doc. No. 116) are

**GRANTED**.  Plaintiffs' Motion to Dismiss Defendants' Counterclaim 3 (Doc. No. 111), Motion

to Dismiss Counterclaim 4 of Defendant JS Karaoke (Doc. No. 113) and Motion to Dismiss

Defendant JS Karaoke's Counterclaim 7 (Doc. No. 118) are **DENIED**.


### III. MOTION TO STRIKE AFFIRMATIVE DEFENSES OF JSK DEFENDANTS

#### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The Sixth

Circuit has recognized that "the action of striking a pleading should be sparingly used by the

courts," calling it "a drastic remedy to be resorted to only when required for the purposes of

justice."  *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir.

1953) (citations omitted).  "The motion to strike should be granted only when the pleading to be

stricken has no possible relation to the controversy."  *Id.*  Courts generally "disfavor" motions to

strike.  *Bell v. Providence Cmty. Corr., Inc.*, No. 3:11-00203, 2011 U.S. Dist. LEXIS 61583, at

*21 (M.D. Tenn. June 7, 2011) (citing *Lopez v. Metro. Gov't of Nashville*, No. 3:07-0799, 2008

U.S. Dist. LEXIS 26783, at *7 (M.D. Tenn. Apr. 1, 2008); *Baker v. Shelby County Gov't*, No.

05-2798 B/P, 2008 U.S. Dist. LEXIS 6010, at *10 (W.D. Tenn. Jan. 28, 2008)).

#### B.  Parties' Arguments

Plaintiffs argue that nineteen of Defendants' twenty affirmative defenses should be

stricken because they are "insufficient and/or improperly pleaded and do not provide Plaintiffs

with the 'fair notice' required under the Federal Rules and applicable decisional authorities."

(Doc. No. 121 at 2.)  As an initial matter, Plaintiffs argue that the pleading standard that the

Supreme Court articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), applies to the pleading of affirmative defenses. (*Id.* at 3.) Consequently, Plaintiffs argue that affirmative defenses 76, 77, 78, 79, 81, 84, and 94 are "wholly conclusory," fail to notify Plaintiffs, and are insufficient as a matter of law, rendering them improperly pleaded. (*Id.* at 3-4.)

Plaintiffs then argue that affirmative defenses 80, 82, 83, 85, 86, 87, 89, 90, 91, and 93 are improperly raised as affirmative defenses because they are "negative" rather than "affirmative," such that they "do no more than attack the merits of [Plaintiffs'] case." (*Id.* at 5-6.) Plaintiffs argue that "the proper venue for such" claims would be in denials in the Answer or motions to dismiss under Rule 12(b)(6). (*Id.* at 6.)

Plaintiffs also assert that affirmative defense 92, stating that Plaintiffs have failed to state claims upon which relief may be granted, is not a true affirmative defense because it does not set forth a reason why Defendants should prevail even if the allegations of the Complaint are true. (*Id.* at 6.) Additionally, Plaintiffs argue that this defense does not provide fair notice as it is a "bare bones, conclusory allegation." (*Id.*)

Finally, Plaintiffs argue that affirmative defense 95 is not an affirmative defense because it is merely a reservation to raise new and additional affirmative defenses, and an affirmative defense is not itself an appropriate legal mechanism for reserving the right to add additional defenses. (*Id.* at 7.)

Defendants respond first by contesting Plaintiffs' arguments that affirmative defenses are subject to the higher pleading standard of *Twombly* and *Iqbal*. Defendants note that the Sixth Circuit has not applied a heightened pleading standard for defenses since *Twombly* and *Iqbal*, using only a "fair notice" standard instead, and that this District "recently declined to extend

*Twombly* and *Iqbal* to affirmative defenses." (Doc. No. 138 at 4-5.) Moreover, Defendants assert that "the remedy of striking defenses should be used sparingly." (*Id.* at 3.) Consequently, Defendants argue that Plaintiffs have failed to meet their burden with respect to affirmative defenses 76, 77, 78, 79, 81, 84, and 94 because Plaintiffs have not shown that the defenses "cannot succeed under any set of facts which *could be* proven," bear no relationship to the case, or are unduly burdensome to Plaintiff. (*Id.* at 6.)

With respect to affirmative defenses 80, 82, 83, 85, 86, 87, 89, 90, 91, and 93, Defendants similarly argue that they are not subject to the *Twombly/Iqbal* standard and assert that the label of "affirmative" as opposed to "negative" defenses is a red herring because the entire purpose of providing defenses in an Answer is to provide notice to Plaintiffs, and these defenses do not in any way shift the burden away from Defendants to Plaintiffs. (*Id.* at 6-8.)

Third, Defendants argue that affirmative defense 92, that Plaintiffs have "fail[ed] to state a claim," is "typically asserted as a motion to dismiss" but has been recognized as an affirmative defense. (*Id.* at 8.) Defendants point to Rule 12(h), which allows the defense of "failure to state a claim" to be raised "in any pleading under Rule 7(a)," which includes the Answer. (*Id.* at 9.)

Finally, Defendants cite cases from other Circuits where courts denied motions to strike defenses that reserved the right to assert additional defenses. (*Id.* at 9-10.) Defendants argue that the purpose of such a reservation in affirmative defense 95 is to provide notice of their reservation of rights under Rule 15, which governs the amending of the pleadings. (*Id.* at 10.)

### C. Analysis

Plaintiffs have failed to persuade the Court that the nineteen of Defendants' twenty affirmative defenses at issue must be stricken. The Court therefore **DENIES** Plaintiffs' Motion to Strike Affirmative Defenses of JSK Defendants.

First, the Court agrees with Defendants that the *Twombly/Iqbal* standard is inapplicable to affirmative defenses. While Plaintiffs have cited to a district court's decision in this Circuit to support their proposition to the contrary, (*see* Doc. No. 121 at 3 (citing *United States v. Quadrini*, No. 2:07-cv-13227, 2007 WL 4303213, at *4 (E.D. Mich. Dec. 6, 2007)), Judge Trauger in this District recently found that *Twombly* and *Iqbal* do not apply to the pleading of affirmative defenses. In *McLemore v. Regions Bank*, Judge Trauger found:

> *Twombly* and *Iqbal* did not change the pleading standard for affirmative defenses. On its face, *Twombly* applies only to complaints and to Rule 8(a)(2), because the [Supreme] Court was interpreting that subsection's requirement of "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2)). The opinion does not mention affirmative defenses or any other subsection of Rule 8. *Iqbal* also focused exclusively on the pleading burden that applies to plaintiffs' complaints. *See* 129 S. Ct. at 1949-54.

No. 3:08-cv-0021, 2010 WL 1010092, at *13 (M.D. Tenn. Mar. 18, 2010). Judge Trauger found that, instead, "the Sixth Circuit has consistently used 'fair notice' as the standard for whether a defendant has sufficiently pleaded an affirmative defense." *Id.* at *14. Thus, "'[a]n affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense.'" *Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1274). Under this standard, the Sixth Circuit found that an affirmative defense that the defendants were "entitled to qualified immunity for all activities complained of in this complaint" to be sufficient. *Id.* Similarly, in a post-*Twombly* and *Iqbal* case, the Sixth Circuit upheld an affirmative defense reading, "Plaintiff's causes of action are barred in whole or in part by the applicable statutes of limitations and repose." *Montgomery v. Wyeth*, 580 F.3d 455, 467 (6th Cir. 2009).

The Court finds that affirmative defenses 76, 77, 78, 79, 81, 84, and 94 have met this "fair notice" standard. Although Defendants' affirmative defenses are brief, they are sufficient to "'give[] [P]laintiffs fair notice of the nature of the defense[s].'" *Lawrence*, 182 F. App'x at 456 (quoting 5 Wright & Miller, Federal Practice and Procedure § 1274). The Court, therefore, will not strike this group—or any other group—of Defendants' affirmative defenses on these grounds.

The Court also declines to strike the second group of affirmative defenses, 80, 82, 83, 85, 86, 87, 89, 90, 91, and 93. The Court disagrees with Plaintiffs that these affirmative defenses are not Rule 8(c) affirmative defenses and instead should have been raised as a denial under Rule 8(b)(2) or in a Rule 12(b)(6) motion. It is true that these affirmative defenses are not explicitly provided in Rule 8(c)(1) as affirmative defenses; however, the list of affirmative defenses under that Rule is not an exclusive list. *See* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, *including* . . ." (emphasis added)). Because the Court finds that this group of affirmative defenses meets the "fair notice" standard, and because striking affirmative defenses is disfavored, the Court will not strike affirmative defenses 80, 82, 83, 85, 86, 87, 89, 90, 91, and 93.

The Court also declines to strike affirmative defense 92. Plaintiffs argue that the "failure to state a claim" defense is not a proper affirmative defense and thus is improperly pleaded and should be stricken. In support of this argument, Plaintiffs cite to two cases from the Northern District of Illinois and one case from the Eleventh Circuit. (Doc. No. 121 at 6-7.) The Federal Rules, however, do not prohibit raising "failure to state a claim" as an affirmative defense. Rule 12(h)(2)(A) permits a party to raise "failure to state a claim" in "any pleading allowed or ordered under Rule 7(a)," which includes the Answer. Moreover, courts in this Circuit have accepted

"failure to state a claim" as an affirmative defense. *See Hughes v. Lavender*, No. 2:10-cv-674, 2011 U.S. Dist. LEXIS 79710, at *11 (S.D. Ohio July 20, 2011); *United States SEC v. Thorn*, No. 2:01-cv-290, 2002 U.S. Dist. LEXIS 21510, at *12 (S.D. Ohio Sept. 30, 2002). Consequently, the Court will not strike affirmative defense 92.

Finally, the Court will not strike affirmative defense 95, which reserved Defendants' right to assert additional defenses at the conclusion of discovery. In support of their argument that this affirmative defense should be stricken, Plaintiffs cite to *Kelley v. Thomas Solvent Co.*, 714 F. Supp. 1439, 1452 (W.D. Mich. 1989). In *Kelley*, the court struck such a reservation in a pleading as "serv[ing] no function," since anything it would achieve was already covered by the Federal Rules governing amending the pleadings. *Id.* However, the court in *Kelley* noted that courts are less likely to strike insufficient defenses in cases that do not concern very specialized claims, such as cost-recovery actions under the Comprehensive Environmental Response, Compensation and Liability Act, at issue in that case. *Id.* at 1442. Moreover, other district courts in other contexts have accepted such reservations. *See, e.g.*, *Bartram, LLC v. Landmark Am. Ins. Co.*, No. 1:10-cv-28-SPM/AK, 2010 WL 4736830, at *7 (N.D. Fla. Nov. 16, 2010) (denying a "motion to strike the reservation of right to add affirmative defenses because Defendant does retain the right [under Rule 15(a)] to seek leave of the Court to amend Defendant's pleading"); *Centex Homes v. Mr. Stucco, Inc.*, No. 8:07-CV-365-T-27MSS, 2008 WL 793587, at *2 (M.D. Fla. Mar. 25, 2008) (finding "Defendant's motion to strike the reservation [to be] unnecessary"); *F.T.C. v. Bronson Partners, LLC*, No. 3:04CV1866(SRU), 2006 WL 197357, at *3 (D. Conn. Jan. 25, 2006) (denying a "motion to strike the reservation of right to add affirmative defenses because the defendants do retain the right [under Rule 15(a)] to seek leave of the court to amend their answer"). Because Defendants retain the right to amend their Answers under Rule 15(a),

and because district courts have found that a reservation of this right via an affirmative defense is appropriate, the Court denies Plaintiffs' motion to strike with respect to affirmative defense 95.

Because the Court will not strike any of Defendants' affirmative defenses, Plaintiffs' Motion to Strike Affirmative Defenses of JSK Defendants is **DENIED**.

## IV. CONCLUSION

For the abovementioned reasons, Plaintiffs' Motion to Dismiss Defendants' Counterclaim 1 (Doc. No. 107), Motion to Dismiss Defendants' Counterclaim 2 (Doc. No. 109), and Motion to Dismiss Defendant JS Karaoke's Tennessee Consumer Protection Act Counterclaim (Doc. No. 116) are **GRANTED**. Accordingly, Defendants' Counterclaims 1 and 2, and JS Karaoke's counterclaim under the Tennessee Consumer Protection Act, are all **DISMISSED**. Plaintiffs' Motion to Dismiss Defendants' Counterclaim 3 (Doc. No. 111), Motion to Dismiss Counterclaim 4 of Defendant JS Karaoke (Doc. No. 113), Motion to Dismiss Defendant JS Karaoke's Counterclaim 7 (Doc. No. 118), and Motion to Strike Affirmative Defenses of JSK Defendants (Doc. No. 121) are **DENIED**.

It is so ORDERED.

Entered this _____7th_____ day of October, 2011.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT